**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **AFS LOGISTICS, L.L.C.** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CASE NO: 3:16-cv-03139** |
| | ) | |
| **v.** | ) | |
| | ) | **Judge Kevin H. Sharp** |
| **CHRISTOPHER R. W. COCHRAN,** | ) | **Magistrate Judge Barbara D. Holmes** |
| **ALESSANDRO RUSTIONI, and** | ) | |
| **FREIGHTWISE, LLC** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

_____

**COMES NOW**, Plaintiff AFS Logistics, LLC (hereafter "AFS" or "Plaintiff") by and through undersigned counsel, and submits this Memorandum of Law in Support of its Response in Opposition to Defendants' Motion to Dismiss. Plaintiff's First Amended Complaint has provided plausible claims against all Defendants on each count. Plaintiff's First Amended Complaint has plead and asserted facts with the requisite level of specificity for Defendants to be on notice of the subject matter of the lawsuit and to permit Defendants to respond. Plaintiff has provided sufficient facts and allegations for a claim of punitive damages to be proven at trial by clear and convincing evidence. Plaintiff has pled with specificity that Defendants acted maliciously, intentionally, fraudulently, or recklessly. The Tennessee Uniform Trade Secrets Act does not preempt any of the five causes of action, as argued unpersuasively by Defendants, because the gravamen of those claims has nothing to do with the presence or absence of a trade secret. Defendants' arguments in their Motion to Dismiss are unpersuasive. Plaintiff respectfully requests this Honorable Court deny Defendants' Motion to Dismiss in its entirety.

1

## FACTUAL BACKGROUND

Plaintiff filed an eight count Amended Complaint against Defendants, Christopher R.W. Cochran, Allessandro Rustioni, and FreightWise, LLC. Plaintiff alleged breach of duty of loyalty, conversion, intentional interference with business relations, tortious interference with contract, violation of Tennessee Uniform Trade Secrets Act, and conspiracy. Plaintiff seeks damages, injunctive relief, and punitive damages related to Defendants' Cochran and Rustioni illegal use of Plaintiff's time, trade secrets, and resources to create and operate the Defendants' new directly competing company, FreightWise, LLC.

On September 30, 2013, Defendant Cochran and Defendant Rustioni joined Plaintiff in a sales leadership position working out of Plaintiff's office at 1200 Division Street, Suite 103, Nashville, Tennessee. (Amend. Compl. ¶13). Defendant Cochran and Rustioni's respective positions gave them access to, and knowledge of, Plaintiff's information including current customers, prospective customers, sales contracts, and confidential and proprietary information including the Plaintiff's unique sales methodology. (Amend. Compl. ¶¶ 15-16).

On September 25, 2014, while still employed by the Plaintiff, Defendants Cochran and Rustioni registered Defendant FreightWise in Nevada as FreightWise LLC. (Amend. Compl. ¶ 19). FreightWise, LLC, is a limited liability company formed under the laws of the State of Nevada doing business in the state of Tennessee. *Id.* Defendants Cochran and Rustioni misappropriated Plaintiff's time, resources, and confidential and proprietary information, during their employment with Plaintiff, to further the goals of FreightWise LLC and engage in unfair competition against the Plaintiff. . (Amend. Compl. ¶¶ 22-24).

In October 2015, Defendant Cochran voluntarily left Plaintiff's employ. (Amend. Compl. ¶ 25). In January 2016, Defendant Rustioni voluntarily left Plaintiff's employ. (Amend. Compl. ¶

2

26). Defendants continue to have in their possession resources, and confidential and proprietary information which belongs to Plaintiff. (Amend. Compl. ¶¶ 27). Plaintiff avers Defendants are currently using these resources, and confidential and proprietary information to engage in actual unfair competition with Plaintiff in furtherance of Defendant FreightWise's business objectives. *Id.*

Plaintiff was unaware of Defendant Cochran and Rustioni's actions in misappropriating Plaintiff's time and resources until September 14, 2016. (Amend. Compl. ¶ 28). On that day, Plaintiff became aware that Defendants Cochran and Rustioni had solicited an existing major client of Plaintiffs. (Amend. Compl. ¶ 29). Plaintiff avers that Defendants Cochran and Rustioni in their respective sales leadership positions, were aware of the contracts that Plaintiff had with a large portion, if not all of its clients, and have intentionally and maliciously interfered with some or all of those contracts for their own benefit by improperly continuing use of Plaintiff's confidential and proprietary information. (Amend. Compl. ¶¶ 30-34).

Defendants Cochran and Rustioni are residents of Williamson County, Tennessee. (Amend. Compl. ¶¶ 6-7). The Plaintiff is a limited liability company located in Shreveport, Louisiana; and registered as a Tennessee foreign limited liability company. (Amend. Compl. ¶ 5). Written discovery has been exchanged by the parties and is expected to be completed before this Court's imposed deadline of July 14, 2017. ICMC Order February 21, 2017.

## PROCEDURAL BACKGROUND

Plaintiff filed this lawsuit in this Honorable Court on December 2, 2016, the substance of which is summarized in the factual background above. Defendants waived service of process on December 12, 2016. Defendants filed a Motion to Dismiss on January 3, 2017. Plaintiff then immediately filed a Motion for Extension of time to Respond on January 4, 2017. Plaintiff's

3

Motion for Extension was granted. Plaintiff filed a voluntary partial nonsuit with regard to its Copyright Infringement claim on February 2, 2017. Additionally, on February 2, 2017 Plaintiff filed a Motion for Leave to Amend the Complaint contemporaneously with its First Amended Complaint. On February 21, 2017, this Court granted Plaintiff's Motion for Leave to Amend and directed the clerk to file Plaintiff's First Amended Complaint. This Order mooted Defendants' previously filed Motion to Dismiss. On March 13, 2017, Defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint. Plaintiff drafted this Memorandum of Law and accompanying Motion of Response in Opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint.

## ARGUMENT

### I.     Legal Standard for a 12(b)(6) Motion to Dismiss.

A motion to dismiss for failure to state a claim should only be granted where there is no set of facts that would allow a plaintiff to recover. *Conley v. Gibson*, 355 U.S. 41 (1957). To survive such a motion, a complaint must contain either direct or inferential allegations respecting each material element to sustain recovery under some viable legal theory. *Lillard v. Shelby Cty. Board of Ed., 76 F.3d 716 (6th Cir. 1996).* In considering a motion to dismiss for failure to state a claim under 12(b)(6), the court must take "all well pleaded material allegations of the pleadings" as true. *Fritz v. Charter Township of Comstock,* 592 F.3d 718, 722 (6th Cir. 2010). The factual allegations in the Complaint only "need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible. i.e., more than merely possible." *Id.* (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of

what the ... claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(*citing Conley v. Gibson,* 355 U.S. 41, 47, (1957)).

## II.    Defendants Argument for a More Definite Statement is Unpersuasive.

Defendants failed to articulate any applicable standards for this Court to rule on this Motion pursuant to Fed. R. Civ. P. 12(e). Defendants failed to describe any caselaw that would support their argument. Defendants argument on this point is so short that it appears to Plaintiff to be an afterthought, not a serious argument made by the Defendants. Common sense also allows an inference that with Defendants twenty-five (25) page Memorandum of Law supporting their arguments, they have sufficient notice from Plaintiff's First Amended Complaint to craft sufficient responsive arguments. Thus, Defendants are not in any need of a more definite statement.

Fed. R. Civ. P. 12(e) Motion for a More Definite Statement states in part: "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." The United States Supreme Court has stated: "The remedy for an allegation lacking sufficient specificity to provide adequate notice is, of course, a Rule 12(e) motion for a more definite statement." *Twombly*, 550 U.S. at 590.

Federal courts generally disfavor motions for more definite statements. *Federal Ins. Co. v. Webne,* 513 F.Supp.2d 921, 924 (N.D.Ohio 2007). "[I]n view of the notice pleading standards of Rule 8(a)(2) and the opportunity for extensive pretrial discovery, courts rarely grant such motions." *E.E.O.C. v. FPM Grp., Ltd.*, 657 F. Supp. 2d 957, 966 (E.D. Tenn. 2009). Fed. R. Civ. P. 8(a)(2) states: ["A pleading that states a claim for relief must contain:"] "a short and plain statement of the claim showing that the pleader is entitled to relief" "Accordingly, if the complaint meets the notice pleading requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure, the motion should be denied." *E.E.O.C., 657 F. Supp. 2d at 966.*

Defendants only cited reasons to request a more definite statement is that "Plaintiff has failed to identify with any particularity the trade secret that the Defendants allegedly misappropriated. Plaintiff has also failed to identify Client X. Plaintiff's Amended Complaint is so vague and ambiguous, that Defendants are unable to formulate and prepare a response." (Defendants' Memorandum in support of MTD at 5-6). This is unpersuasive because in the Amended Complaint Plaintiff has adequately described the trade secret as a confidential and proprietary client database as well as a confidential and proprietary formula that establishes benchmark market prices and determines unique client pricing structures obtainable through Plaintiff's services. (Amend. Compl. ¶¶ 61-76). Plaintiff has given adequate information in its Amended Complaint, including the timeline in which Defendants interfered with Client X's contract for Defendants to ascertain the identify of Client X and the veracity of Plaintiff's claims. (Amend. Compl. ¶¶ 29, 30, 33). Defendants final argument that they are unable to formulate and prepare a response is specious when examined in the context of the twenty-five (25) page Memorandum of Law in which they are arguing. Plaintiff's Amended Complaint satisfies the Fed. R. Civ. P. 8(a)(2) pleading standard, Defendants are not entitled to a more definite statement.

**III.    Count V (Violation of Tennessee Uniform Trade Secrets Act) is sufficiently pled.**

Under TUTSA, a claim for misappropriation of a trade secret will stand where information that: (1) "derives independent economic value from not generally being known" and for which reasonable efforts have been taken to maintain its secrecy; (2) learned by the defendant "while in a position of trust and confidence" to the plaintiff; is (3) used (4) to the plaintiff's detriment. Following TUTSA's enactment in 2000, civil claims that are "based upon misappropriation of a trade secret" are now preempted by TUTSA and governed by the law of that Act. Tennessee enacted its version of the Uniform Trade Secrets Act in 2000. *See,* Tenn. Code Ann. § 47–25– 1701. Under the Act, "Trade secret" means information, without regard to form, including, but not

limited to, technical, nontechnical or financial data, a formula, pattern, compilation, program, device, method, technique, process, or plan that:

> (A) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and

> (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Tenn. Code Ann. 47–25–1702(4).

> Several factors are relevant to determining whether information falls within this statutory definition, including the extent of public knowledge; measures taken to guard its secrecy; the value of the information both to the business and to its competitors; money that was spent to develop the information; and the ease or difficulty with which it could be acquired by outsiders.

*PartyLite Gifts, Inc. v. Swiss Colony Occasions,* 246 Fed.Appx. 969, 973 (6th Cir.2007).

Plaintiff has alleged sufficient allegations for its trade secret claim to survive Defendants' motion to dismiss. (Amend. Compl. ¶¶ 61-76). "The Formula and Database are not generally known outside of Plaintiff's business and therefore derive independent economic value." (*Id.* ¶ 67). "Plaintiff has taken specific reasonable measures to guard the secrecy of the information contained in the Database and Formula." (*Id.* ¶ 69). "Defendants Cochran and Rustioni misappropriated Plaintiff's Formula and Database by removing confidential and proprietary information for the improper purpose of obtaining an unfair advantage when soliciting Plaintiff's existing clients." (*Id.* ¶ 71). This has established Plaintiff's prima facie case and Plaintiff avers that additional evidence to corroborate Plaintiff's claims will be produced during discovery.

In Defendants' motion to dismiss, Defendants wage questions and tasks not appropriate at this stage such as, but not limited to: information known or not known outside of its business, the extent of the information known by employees and others involved in the business, extent of measures to guard the information, actual economic value, value of the information known to

Plaintiff or its competitors, and information on how or when the Defendants "removed" the information. Defendants unpersuasively argue that Client X is somehow related to Plaintiff's trade secret claim. (Defendants' MTD at 17). Client X is not. Defendants also argue that since Cochran and Rustioni had authorized access that any information gained was through proper means. (Defendants' MTD at 18). This is not true, as Plaintiff alleged "Defendants Cochran and Rustioni misappropriated Plaintiff's Formula and Database by removing confidential and proprietary information for the improper purpose of obtaining an unfair advantage when soliciting Plaintiff's existing clients." (Amend. Compl. ¶ 71). Defendants access was limited to use within the scope of their employment with AFS. Any removal of Plaintiff's trade secrets was through improper means. *See ProductiveMD, LLC v. 4UMD, LLC*, 821 F. Supp. 2d 955, 962 (M.D.Tenn. 2011).

Most strikingly, Defendants fail to cite any cases that indicate that Plaintiff must additionally plead the specific efforts Plaintiff undertook to ensure secrecy. As this Court noted in *ProductiveMD*, "[i]t would be superfluous to include this as an additional element because, by definition, a trade secret requires reasonable efforts to maintain secrecy." *ProductiveMD, LLC v. 4UMD, LLC*, 821 F. Supp. 2d 955, 962 (M.D.Tenn. 2011). Plaintiff alleges that "Plaintiff has taken specific reasonable measures to guard the secrecy of the information contained in the Database and Formula." (Amend. Compl. ¶ 69).

In regard to the other inquires listed above, all that is needed at this point, pursuant to Fed. R. Civ. P. (8)(a)(1), is to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Ultimately, "[s]pecific facts are not necessary; the statement need only 'give the defendant notice of what… the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Accordingly, Plaintiff's Claim of Defendants' Violation of the Tennessee Uniform Trade Secrets Act is sufficiently pled and should not be dismissed. While

Plaintiff has a claim of the Violation of the Tennessee Uniform Trade Secrets Act, this Act does not preempt Plaintiff's additional civil claims.

## IV. Plaintiff's additional civil claims are sufficiently pled and are NOT preempted by the TUTSA.

When analyzing preemption, all cases respectively turn on their factual circumstances as reflected by the plaintiff's pleadings. *Hauck Mfg. Co. v. Astec Indus.,* Inc., 375 F. Supp. 2d 649, 657 (E.D. Tenn. 2004). Courts have permitted plaintiffs to protect non-trade secret information through the use of generally applicable tort claims which are not, by definition, "limited to the alleged pilfering of intangible property, but could be made out based on such facts (*e.g.,* unfair competition, conversion, unjust enrichment, breach of confidence, breach of fiduciary duty, fraud, misrepresentation, tortious interference with contract, *etc.*)." *Id.* at 655. Unanimously, Courts agree that in order for non-TUTSA claims to survive they must rely on something more than allegations of misappropriation of trade secrets. *Id.* at 656. By its terms, TUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." Tenn. Code Ann. § 47–25–1708(a). It does not, however, preempt, among other things, "[o]ther civil remedies that are not based upon misappropriation of a trade secret." Tenn. Code Ann. § 47–25–1708(b)(2). *Ram Tool & Supply Co. v. HD Supply Const. Supply, Ltd.*, 2014 WL 4102418, at *12 (Tenn. Ct. App. Aug. 19, 2014), *appeal granted, cause remanded* (Nov. 24, 2015).

### A. <u>Count I – Breach of Duty of Loyalty</u>

An employee who breaches the fiduciary duty of loyalty may be required to disgorge any profit or benefit he received as a result of his disloyal activities. *See ITT Cmty. Dev. Corp. v. Barton,* 457 F.Supp. 224, 230 (M.D.Fla.1978); *Clyde Rudd & Assocs., Inc. v. Taylor,* 29 N.C.App. 679, 225 S.E.2d 602, 604 (1976); Restatement (Second) of Agency § 469. In addition, an employee who breaches the duty of loyalty may be required to surrender any compensation paid by the employer during the period of breach. *Baker v. Battershell,* 1986 WL 7602, at *6 (Tenn.Ct.App. July 9, 1986) (citing *Red Boiling Water Co. v. McEwen,* 3 Tenn. C.C.A. (Higgins) 687 (Tenn.Ct.App.1913)). It is not necessary that the employer suffer a loss in order to recoup such illicit profits or compensation from the

9

employee. *Phansalkar v. Anderson Weinroth & Co.,* 344 F.3d 184, 200 (2d. Cir.2003); *Ross v. Calamia,* 153 Fla. 151, 13 So.2d 916, 917 (1943); *Faultersack v. Clintonville Sales Corp.,* 253 Wis. 432, 34 N.W.2d 682, 684 (1948); Restatement (Second) of Agency § 469.

*Efird v. Clinic of Plastic & Reconstructive Surgery, P.A.*, 147 S.W.3d 208, 220 (Tenn. Ct. App. 2003).

In support of their Motion to Dismiss, Defendants argue that they are merely employees and not officers or directors. As such, the assumed argument is that they do not owe a fiduciary duty. (Defendants' MTD p.7 ¶ 2). This argument is similar to the defendant's argument in *Productive MD LLC v. 4MUD LLC* where the defendant in that case argued that since he was not alleged by plaintiff "to have been an officer or director of ProductiveMD, the breach of loyalty claim should be dismissed." 821 F. Supp. 2d 955, 964 (M.D.Tenn. 2011) (citing *Weiss v. Laboratory Corp. of America Holdings*, 2007 WL 4365764 at *13 (M.D.Tenn. 2007). Case precedent is clear that "[a]n employee 'must act solely for the benefit of the employer in matters within the scope of his employment' and 'must not engage in conduct that is adverse to the employer's interests.'" *Efird v. Clinic of Plastic and Reconstructive Surgery, P.A.,* 147 S.W.3d 208, 220 (Tenn.Ct.App. 2003). Taking note of this case precedent, this Court in *ProductiveMD* did not dismiss the breach of duty of loyalty claim because while the plaintiff did not allege the defendant was an owner or officer, he was still an employee and owed a duty of loyalty. *ProductiveMD, LLC v. 4UMD, LLC*, 821 F. Supp. 2d 955, 964 (M.D.Tenn. 2011). To that same end, Defendants are necessarily employees who owed a duty of loyalty in the case at bar.

Additionally, Defendants argue that they were merely employees preparing to compete with their employer while they were employed. (Defs' MTD p. 6-7). While it is true that "an employee does not breach a duty of loyalty to his employer by making preparations to compete while still employed" any overt actions in direct competition to a current employer go beyond

10

mere preparation and are legally actionable for a breach of the duty of loyalty. *See ProductiveMD, LLC*, 821 F.Supp.2d at 964. Plaintiff has sufficiently plead that Defendants' actions in forming a company in direct competition to their current employer while still employed. (Amend. Compl. ¶ 38 *stating*: "Defendants began acting for their own benefit…at least (10) ten months prior to leaving employment with Plaintiff"); (Amend. Compl. ¶ 39 *stating*: "Defendants engaged in actual and unfair competition while still under Plaintiff's employment by misappropriating Plaintiff's time, resources, and confidential and proprietary information in order to benefit and further the goals of their competing business, Defendant FreightWise").

Factually the case at bar is inherently different from the cases cited by Defendants about preparing to compete. For example, in one of these cases the preparatory actions commenced approximately a week before the departure of the employee. *Knott's Wholesale Foods, Inc. v. Azbell*, No. 01A-01-9510-CH-00459, 1996 WL 697943, at *1 (Tenn. Ct. App. Dec. 6, 1996); (Defendants' MTD at 6). Here, the alleged "preparing to compete" phase of Defendants Cochran and Rustioni lasted almost a full calendar year. (Amend. Compl. ¶ 38).

AFS's allegations of defendants' actions go far beyond mere preparation to compete. When the allegations and inferences to be drawn from them are construed in AFS's favor they suggest that more than mere mistaken judgment or negligence, and "intentional, destructive acts completed explicitly for the employee's own self-interests in direct violation or competition with the interests of the employer." *Booth v. Fred's Inc.,* 2003 WL 21998410 at *13 (Tenn.Ct.App. Aug. 19, 2003); *ProductiveMD, LLC v. 4UMD, LLC*, 821 F. Supp. 2d 955, 964 (M.D.Tenn. 2011); (Amend. Compl. ¶¶ 39, 41).

In applying *Hauck's* "same proof" test, a claim is preempted "when it necessarily rises or falls based on whether the defendant is found to have 'misappropriated' a 'trade secret.'" *Hauck*,

375 F.Supp.2d at 658. According to Plaintiff's Amended Complaint, the breach of the duty of loyalty is not preempted because it relies on "interfering with Plaintiff's business relationships; converting Plaintiff's time and tangible property (e.g., office supplies, computers, printers, telephones, etc.); and diverting clients and prospective clients to their newly formed business entity." (Amend. Compl. ¶ 41). Defendants' preemption arguments as to Count I are unpersuasive because while Plaintiff does mention the confidential and proprietary information unlawfully appropriated by Defendants', which is alleged separately as a misappropriation of a trade secret, that is not the only proof or reason that Plaintiff has offered for Defendants' breach of the Duty of Loyalty. *Id*; *See Hauck*, 375 F.Supp.2d at 658. Instead Plaintiff has alleged Defendants breached their Duty of Loyalty by: "interfering with Plaintiff's business relationships; converting Plaintiff's time and tangible property (e.g., office supplies, computers, printers, telephones, etc.); and diverting clients and prospective clients to their newly formed business entity." (Amend. Compl. ¶ 41). Thus, Plaintiff's claim for breach of Duty of Loyalty may be successful or fail *independent* of Plaintiff's misappropriation of a trade secret claim, thus it is clearly not preempted in applying the "same proof" test. *Id; See Hauck*, 375 F.Supp.2d at 658.

## B. Count II - Conversion

Under Tennessee common law, a cause of action for conversion requires a plaintiff to prove (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, and (3) in defiance of the true owner's rights. *Kinnard v. Shoney's Inc.,* 100 F.Supp.2d 781, 797 (M.D.Tenn.2000); *Paehler v. Union Planters Nat'l Bank,* 971 S.W.2d 393, 398 (Tenn.Ct.App.1997).

Plaintiff's Complaint alleges that the Defendants "wrongfully asserted dominion over Plaintiff's tangible property including but not limited to improperly using Plaintiff's phone(s),

12

computer(s), paper, printer(s), printer ink, and various other office supplies, to benefit and further goals of Defendant […]." (Amend. Compl. ¶ 45). Defendants correctly assert that Tennessee courts have in fact consistently rejected claims for conversion based on intangible property. (Defendants' MTD p. 14). This precedent in Tennessee case law held true in *Ram Tool & Supply Co. v. HD Supply Const. Supply, Ltd.,* where the plaintiff alleged conversion of, "confidential customer and proprietary business information." 2014 WL 4102418 (Tenn. Ct. App. Aug. 19, 2014). However, Plaintiff in the matter at bar has not alleged the conversion of intangible property. (Amend. Compl. ¶ 45). Additionally, Defendants note the decision for preemption in *Hauck* citing "the physical property [p]laintiff alleges to have been stolen derived its primary, if not entire value from the trade secrets contained therein." *Hauck Manufacturing Company v. Astec Industries, Inc.,* 375 F. Supp.2d 649. 661(E.D. Tenn. 2004). In that case, preemption applied, and made mention of another case in which a conversion claim was preempted by the UTSA, except to the extent that plaintiff claims conversion of physical items. *Powell Prod., Inc. v. Marks*, 948 F. Supp. 1469, 1479 (D. Colo. 1996). Plaintiff merely alleges that Defendants in this matter converted physical office supplies to benefit and further their goals in a manner inconsistent with Plaintiff's ownership rights without Plaintiff's consent. (Amend. Compl. ¶¶ 44-46).

Defendant also argues that since they did not retain any of the Plaintiff's tangible property they cannot be liable under conversion as a matter of law. This is a misstatement of the law in Tennessee. "Assuming control of the property inconsistently with the rights of the owner, under our authorities, is itself a conversion[…]." *Lance Prods., Inc. v. Commerce Union Bank*, 764 S.W.2d 207, 212 (Tenn. Ct. App. 1988). "After an act of conversion has taken place and become complete, a return, restoration or tender or offer to return or restore the property, although provable

13

in some cases, will not bar the cause of action in trover (for conversion). 89 C.J.S., *Trover and Conversion* § 86, 581–82." *Id*. Therefore, Plaintiff's conversion claim should not be dismissed.

### C. Count III- Intentional Interference with Business Relations

In Tennessee, a plaintiff must show the following elements to establish a claim of intentional interference with business relationships: (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and (5) damages resulting from the tortious interference. *Trau–Med of Am., Inc. v. Allstate Inc. Co.,* 71 S.W.3d 691, 701 (Tenn.2002).

Defendants argue that that TUTSA defines "misappropriation" broadly enough to cover a wide array of conduct. (Defendants' MTD p. 12). Counts that rely on the misappropriation of confidential, proprietary, or trade secrets information as a factual basis for its claim are preempted. *Ram Tool & Supply Co. v. HD Supply Const. Supply, Ltd*., 2014 WL 4102418, at *16-7 (Tenn.Ct.App. Aug. 19, 2014). Defendants insist that the client database, lists, and contacts would fall under the "same proof" test and thus would be preempted by TUTSA. (Defs' MTD p. 12). In *ProductiveMD*, defendants moved to dismiss based on defendant's "specific knowledge of ProductiveMD's client relationship" and the "overarching allegation is that Defendants used confidential and proprietary client information." However, this Court did not read the paragraphs of the Complaint as necessarily being grounded on the use of trade secrets because, as the defendants themselves pointed out, an employee's "remembered information and relationships with customers are not a trade secret," *PartyLite,* 246 Fed.Appx. at 973, although use of that

14

information may amount to the intentional interference with business relationship. *See Vincit Enter. Inc. v. Zimmerman,* 2006 WL 1319515 at *7 (M.D.Tenn. May 12, 2006) (for purpose of intentional interference claim, "[t]he solicitation of customers is not related to trade secrets"); *ProductiveMD, LLC*, 821 F. Supp. 2d at 967. Therefore, this Court did not dismiss the claim in *ProductiveMD*.

Similarly, this Court should not dismiss Plaintiff's intentional interference with business relationships claim because the Defendants in this matter state that they "had authorized access to the client database, so any information gained was through proper means." (Defendants' MTD p.18). Plaintiff had existing business relationships with its clients and Defendant's had specific knowledge of Plaintiff's client relationships. Further, Defendants have specifically targeted Plaintiff's clients with the intent to convince those clients to end their business relationship with Plaintiff. (Amend. Compl. ¶¶ 47-51). As a result, at least one client has ended its business relationship with Plaintiff. Accordingly, Plaintiff meets the *prima facie* elements for Tortious Interference with Business Relationships. (*Id*.). Additionally, this claim is not preempted by the TUTSA because Defendants admit that they had authorized use and that an employee's remembered information and relationships with customers are not trade secret and ultimately the solicitation of customers is not related to trade secrets under the "same proof" test. *See Hauck*, 375 F.Supp.2d at 658.

**D. <u>Count IV- Tortious Interference with Contract</u>**

Tennessee undoubtedly recognizes both a statutory and common law action for unlawful inducement of a breach of contract. *Quality Auto Parts Co. v. Bluff City Buick Co.,* 876 S.W.2d 818, 822 (Tenn.1994). The elements of the statutory and common law actions are the same. *Williams-Sonoma Direct, Inc. v. Arhaus, LLC*, 304 F.R.D. 520, 529 (W.D. Tenn. 2015). In order

15

to recover under either the common law or statutory action, a plaintiff must prove (1) there was a legal contract; (2) the defendant was aware of the contract; (3) the defendant maliciously intended to induce a breach; and (4) the defendant's actions proximately caused a breach and resulting damages. *Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.,* 13 S.W.3d 343, 359 (Tenn.Ct.App.1999).

Plaintiff alleges in its Amended Complaint that there was a contract, that the Defendants were aware of the contract and that the Defendants maliciously intended to induce a breach, which proximately caused a breach and resulting damages. (Amend. Compl. ¶¶ 54-60). On the face of the pleadings and construed in favor of the Plaintiff, AFS sufficiently pleads its tortious interference with contract claim. In applying the *Huack*, "same proof" test it is clear that this count is not preempted. The test derived in *Huack* is "a claim will be preempted when it necessarily rises or falls based on whether the defendant in found to have 'misappropriated' a 'trade secret' as those terms are defined by the UTSA."

> Plaintiff's claims for tortious interference with and/or unlawful procurement of breach of Irwin's conflict of interest agreement do not depend on such an allegation in any way. In fact, proof of such facts would be only marginally relevant to the claim. Accordingly, the UTSA does not preempt Plaintiff's tortious interference and unlawful procurement claims to the extent they are based on Irwin's conflict of interest agreement.

*Hauck Mfg. Co. v. Astec Industries, Inc.*, 375 F. Supp. 2d 649, 660 (E.D.Tenn. 2004).

Similarly, Plaintiff's claim in this case for tortious interference with contract should not be dismissed as it is sufficiently pled and not preempted under TUTSA.

### E.  Count V- Conspiracy

The elements of a cause of action for civil conspiracy under Tennessee common law are (1) a common design between two or more persons; (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means; (3) an overt act in furtherance of the

conspiracy; and (4) injury to person or property resulting in attendant damage. *See Menuskin v. Williams,* 145 F.3d 755, 770 (6th Cir.1998); *Braswell v. Carothers,* 863 S.W.2d 722, 727 (Tenn.Ct.App.1993). In addition, civil conspiracy requires an underlying predicate tort allegedly committed pursuant to the conspiracy. *Morgan v. Brush Wellman, Inc.,* 165 F.Supp.2d 704, 721 (E.D.Tenn.2001) (citing *Tenn. Publ'g Co. v. Fitzhugh,* 165 Tenn. 1, 52 S.W.2d 157, 158 (1932)). *Hauck Mfg. Co. v. Astec Indus., Inc.,* 375 F. Supp. 2d 649, 660 (E.D. Tenn. 2004). Plaintiff has met its burden of establishing a prima facie case for civil conspiracy by alleging: "Defendant Cochran and Defendant Rustioni were engaged in a conspiracy to misappropriate Plaintiff's clients, convert Plaintiff's tangible property, interfere with Plaintiff's business relationships, and tortuously interfere with Plaintiff's contracts." (Amend. Compl. ¶ 78).

In comparison to the *Hauck* case, "[t]he object of the alleged conspiracy was to steal [p]laintiff's trade secrets and other confidential information and the predicate torts were misappropriation of trade secret […]." *Hauck Mfg. Co. v. Astec Indus., Inc*., 375 F. Supp. 2d 649, 660 (E.D. Tenn. 2004). The Court in *Hauck* determined that the plaintiff's allegations clearly indicated that the overriding object of the conspiracy was to disseminate the plaintiff's confidential and proprietary information. Therefore, the conspiracy claim as pled was preempted. However, Plaintiff's conspiracy claim in its Amended Complaint does not allege misappropriation of trade secrets as the predicate tort; rather the predicate torts are: conversion, intentional interference with business relationships, and tortious interference with contract. As pled, Plaintiff's conspiracy claim is not preempted and is sufficiently pled and as such should not be dismissed. (Amend. Compl. ¶¶ 77-80).

### V.    Plaintiff's Claim for Injunctive Relief may not be dismissed for failure to state a claim at this stage of the Litigation.

17

Collateral Estoppel does not apply to Plaintiff's claim for Injunctive relief because Plaintiff is entitled to a permanent injunction if Plaintiff succeeds in this case on the merits pursuant to Fed. R. Civ. P. 65. A Plaintiff may lose at the TRO and/or preliminary injunction, yet succeed on the merits and therefore be granted injunctive relief. "Findings made in preliminary injunction proceeding lack preclusive effect because they are rarely final." *Gerber v. Computer Associates Intern., Inc.*, 812 F.Supp. 361, 364 (E.D.N.Y.1993). Findings made on motions for preliminary injunctions do not estop the parties at the trial on the merits, and are neither determinative of the issues in the case, nor binding upon the parties or the court at a subsequent trial. *Bronson v. Board of Educ. of City School Dist. of Cincinnati*, 550 F.Supp. 941, 945 (S.D.Ohio 1982)(*citing Diversified Mortgage Investors v. U.S. Life Title Ins. Co. of New York*, 544 F.2d 571, 576 (2d Cir.1976); *Bursten v. Phillips*, 351 F.2d 616 (9th Cir.1965); *NLRB v. Acker Industries, Inc.*, 460 F.2d 649, 652 (10th Cir.1972); *Industrial Bank of Washington v. Tobringer*, 405 F.2d 1321, 1323–1324 (D.C.Cir.1968)). Dismissing Plaintiff's request for injunctive relief at this point in the lawsuit is premature. Defendants argument is unpersuasive because the parties have exchanged discovery in this case and new evidence is likely to be discovered that was not present before the Davidson County Chancery Court. (Defendants' MTD at 22-23).   Additionally, caselaw shows that if Plaintiff discovers new evidence not before the first court an injunction was litigated in, this Court may consider the new evidence in order to determine if the same issues have been decided to merit preclusive effect. *Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency*, 126 F.3d 461, 477 (3d Cir. 1997).

### VI.    Plaintiff has stated a sufficient claim for Punitive Damages.

Under Tennessee Code Annotated §29-39-104, "Punitive damages may only be awarded if the claimant proves by clear and convincing evidence that the defendant against whom punitive

18

damages are sought acted maliciously, intentionally, fraudulently, or recklessly." "A person acts intentionally when it is the person's conscious objective or desire to engage in the conduct or cause the result." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). (*citing* the criminal definition of "intentional").

The Defendants' actions were intentional. Defendants consciously and intentionally engaged in conduct they knew would adversely affect their current employer and result in harm to the plaintiff. Defendants intentionally did not inform Plaintiff of the formation of their competing business in order to mislead Plaintiff, solicit Plaintiff clients, and exploit Plaintiff's time, resources and proprietary business information to effectively gain an unfair advantage. *See* (Amend. Compl. ¶¶ 89-103).

"A person acts fraudulently when (1) the person intentionally misrepresents an existing, material fact or produces a false impression, in order to mislead another or to obtain an undue advantage, and (2) another is injured because of reasonable reliance upon that representation." *Id.* Previously, the Tennessee Court of Appeals found that a party whose actions were fraudulent, intentional and knowing was subject to punitive damages. *Dog House Investments, LLC v. Teal Properties, Inc.*, 448 S.W.3d 905, 917. (Tenn.Ct.App. 2014).

The Defendants' actions were fraudulent. Defendants organized a competing business while still employed by Plaintiff. Defendants knowingly misappropriated time, resources and proprietary information of their current employer for the benefit of their competing business. Defendants also misled Plaintiff into believing that they were acting in the best interest of Plaintiff's company, upholding their fiduciary duties of confidentiality and loyalty by continuing their employment while simultaneously using their employer's time and resources in order to establish their competing business. Plaintiff reasonably relied on Defendants representation that

19

they were upholding their fiduciary duties of confidentiality and loyalty. By constructing Defendant FreightWise through the misappropriation of Plaintiff's time, resources, and confidential and proprietary information, Defendants Cochran and Rustioni formed a competing business which they knew would result in harm to the Plaintiff. The advantage Defendants obtained over Plaintiff has resulted in substantial and continuous financial harm to Plaintiff. *See* (Amend. Compl. ¶¶ 89-103).

Each of the Defendants' separate acts described above has proximately caused Plaintiff to suffer economic and non-economic damages in excess of $75,000. Defendants' actions were done with malice (having an intent to injure Plaintiff); and/or they were done with conscious or reckless disregard for the rights and well-being of Plaintiff. Accordingly, Plaintiff is entitled to punitive damages upon an evidentiary showing. (Amend. Compl. ¶¶ 101-103).

### VII. Legal Standard for presenting matters outside the pleadings, on a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), pursuant to Fed. R. Civ. P. 12(d).

Fed. R. Civ. P. 12(d) Result of Presenting Matters Outside the Pleadings states: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d) is best understood against the backdrop that is Fed. R. Civ. P. 12(b)(6), which provides for the dismissal of a complaint where a plaintiff has failed to state a claim upon which relief can be granted. Arguments relying on matters not found in the pleadings are not within the scope of a 12(b)(6) Motion to Dismiss.

Courts interpreting Fed. R. Civ. P. 12(d) have described the rule as giving discretion to the trial court judge. For example, "A district judge has complete discretion to determine whether or not to accept the submission of any material beyond the pleadings...or to reject it or simply not

consider it." *Helfand v. W.P.I.P., Inc.*, 165 F.Supp.3d 392, 395 (D. Md. 2016)(*citing Sager v. Hous. Comm'n of Anne Arundel Cty.,* 855 F.Supp.2d 524, 542 (D. Md. 2012). "This discretion should be exercised with great caution and attention to the parties' procedural rights." *Sager*, 855 F.Supp.2d at 542.

The United States Court of Appeals for the Sixth Circuit has addressed the extent to which district courts may consider items appearing outside of the record in deciding a Rule 12(b)(6) Motion to Dismiss stating in part:

> This Court has recognized that it may consider items appearing in the record of the case, including exhibits, without converting a Rule 12(b)(6) motion into a motion for summary judgment, but only "so long as they are *referred to in the complaint* and are central to the claims contained therein." *Rondigo, L.L.C. v. Twp. of Richmond,* 641 F.3d 673, 681 (6th Cir.2011) (emphasis added) (*quoting Bassett v. NCAA,* 528 F.3d 426, 430 (6th Cir.2008)) (internal quotation marks omitted). Here, the amended complaint did not refer to any of the record evidence cited by the Trustees in their briefing on appeal. Thus, the district court appropriately limited its Rule 12(b)(6) inquiry to the four corners of the amended complaint.

*Trustees of Detroit Carpenters Fringe Benefit Funds v. Patrie Const. Co*., 618 F.App'x 246, 255 (6th Cir. 2015).

### VIII. Application of Defendants' presenting matters outside the pleadings on a Motion to Dismiss.

Under the standard of law, as articulated above in section VI, this Court has discretion about how to proceed under Fed. R. Civ. P. 12(d). Plaintiff recommends the Court weigh the unfair prejudice that would be felt by the Plaintiff in having this matter determined by summary judgment at such an early stage in the litigation, before any discovery has occurred. Discovery would presumably help Plaintiff make stronger factually based arguments at the summary judgment stage showing that a reasonable jury could find Defendants have damaged plaintiff through the eight counts alleged in the Amended Complaint on a preponderance of the evidence standard. Without discovery, Plaintiff is unable to determine which material facts are in dispute and which are not

and appropriately present a response in opposition to summary judgment, as well as move for Plaintiff's own summary judgment to this Court.

Plaintiff recommends that this Court follow the straightforward approach of the Sixth Circuit in *Trustees of Detroit Carpenters Fringe Benefit Funds* and limit this pending 12(b)(6) Motion to Dismiss inquiry "to the four corners" of the Amended Complaint. 618 F. App'x at 255. The entire argument made by Defendants that Plaintiff is collaterally estopped from requesting injunctive relief, relies heavily on matters outside the pleadings, which have not been discussed at all by Plaintiff. (Defendants' MTD p. 21-23). Plaintiff did not refer in their Amended Complaint to any previous court decisions on this issue, thus it is impermissible for Defendants to raise them here under Fed. R. Civ. P. 12(d), and the standard articulated by the Sixth Circuit. *Id*.

Similarly, this Court should not credit Defendants version of events in the Procedural Background section of Defendants' Memorandum of Law in Support of Motion to Dismiss. The allegation that Plaintiff is forum shopping is a baseless allegation by Defendants. Especially here where Plaintiff had the choice under all applicable federal and state laws to file the initial case in State or Federal Court. If Defendant had removed the case to Federal Court, the case would have ended up in this Court's Jurisdiction anyway. Plaintiff's arguments as pointed out by the Defendants rely on Tennessee law. Plaintiff did not file this case in a different state in order to achieve favorable laws governing the case. Thus, Defendants allegation of forum shopping is specious and not well made. Further, in as much as Defendants' allegation of forum shopping warrants a response, Plaintiff is the "master of the lawsuit" as such the Plaintiff has the right to file in the venue it chooses and there is no reason why this Court as it applies Tennessee law cannot fairly and equitably adjudicate this matter.

## <u>CONCLUSION</u>

Plaintiff has timely filed this Memorandum of Law in Support of Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint showing why that Defendants' Motion to Dismiss should be denied in its entirety. Plaintiff's First Amended Complaint has provided plausible claims against all Defendants on each count. Plaintiff's First Amended Complaint has plead and asserted facts with the requisite level of specificity for Defendants to be on notice of the subject matter of the lawsuit and to permit Defendants to respond. The Tennessee Uniform Trade Secrets Act does not preempt any of the five causes of action, as argued unpersuasively by Defendants, because the gravamen of those claims has nothing to do with the presence or absence of a trade secret. Defendants' arguments in their Motion to Dismiss are unpersuasive. Therefore, this Court should deny Defendant's Motion to Dismiss in its entirety.

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court deny Defendants' Motion to Dismiss, award attorney fees to Plaintiff for this Response to Defendant's Motion, and for any further and general relief deemed appropriate by this Court.

Respectfully submitted,

/s/ Todd G. Cole
**Todd Cole, Esq. - #31078**
COLE LAW GROUP, P.C.
750 Old Hickory Blvd., Ste 2-202
Brentwood, TN 37027
Telephone: 615.490.6020
Fax: 615.942.5914
tcole@colelawgrouppc.com
*Attorney for Plaintiff*

23

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing Memorandum of Law in Support of Plaintiff's Response in Opposition to Defendants' Motion to Dismiss was served via the Court's CM/EFC electronic filing system on:

Thomas W. Shumate IV
Meridian Law, PLLC
2002 Richard Jones Road, Ste. B-200
Nashville, TN 37215
tom.shumate@meridian.law

on this 27th day of March, 2017

/s/ Todd G. Cole
**TODD G. COLE**