IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| AFS LOGISTICS, L.L.C. | ) | |
| | ) | |
| v. | ) | No. 3:16-3139 |
| | ) | |
| CHRISTOPHER R. W. COCHRAN, | ) | |
| ALESSANDRO RUSTIONI, and | ) | |
| FREIGHTWISE, L.L.C. | ) | |

# **M E M O R A N D U M   O P I N I O N**

Presently pending is Defendants' motion to dismiss Plaintiff's first amended complaint (Docket Entry No. ("DE") 29), to which Plaintiff has filed a response. DE 32. Defendants have also filed a subsequent reply to Plaintiff's response. DE 51. This action is before the undersigned for all further proceedings pursuant to the consent of the parties and referral of the District Judge in accordance with 28 U.S.C. § 636(c). DE 37.

For the reasons set forth below, Defendants' motion (DE 29) is GRANTED IN PART and DENIED IN PART.[1]

## I. FACTUAL BACKGROUND

The first amended complaint contains the following allegations. Plaintiff AFS Logistics, L.L.C. ("AFS" or "Plaintiff") is a limited liability company, with its corporate headquarters located in Shreveport, Louisiana, that handles transportation cost management and cargo logistics. DE 27 at 1, ¶ 5. Defendant FreightWise, L.L.C. ("FreightWise") is a Nevada limited

---

[1] In light of this ruling, Plaintiff's motion to ascertain the status of the Defendants' motion to dismiss (DE 50) is rendered MOOT.

liability company formed by Defendants Christopher Cochran ("Cochran") and Alessandro Rustioni ("Rustioni") (collectively referred to as "Defendants") in September of 2014 whose business also involves transportation cost management. *Id*. at 2, 4, ¶¶ 8, 21.[2] Cochran and Rustioni are former AFS employees who started FreightWise while they were still employed by AFS. *Id*. at 3-4, ¶¶ 13-14, 19-20. Both Cochran and Rustioni served in "sales leadership positions" at AFS, which purportedly gave them access to Plaintiff's "confidential and proprietary information including sales methodology." *Id*. at 3, ¶¶ 13-16.[3] Cochran and Rustioni resigned from their positions at AFS in October of 2015 and January of 2016, respectively. *Id*. at 4, ¶¶ 25-26.

Plaintiff alleges that while employed by AFS, Defendants Cochran and Rustioni conspired to utilize AFS's "time and resources to secretly organize" FreightWise, a company that competes directly with AFS. *Id*. at 3-4, ¶ 18. Plaintiff specifically alleges that Defendants improperly solicited one of AFS's major clients, identified as "Client X," and ultimately convinced this client to breach its contract with AFS "with the intent of initiating business" with FreightWise. *Id*. at 5, ¶¶ 29-31. Plaintiff claims that because of their leadership positions at AFS, Cochran and Rustioni were aware of the contracts that AFS had entered into "with a large portion, if not all, of its clients," and were thus able to "intentionally and maliciously interfere[]" with all such contracts. *Id*. at 5, ¶ 33. Plaintiff does not identify any other examples of such

---

[2] The headquarters of FreightWise are located in Davidson County, Nashville, Tennessee. DE 27 at ¶ 8.

[3] Defendant Cochran is subsequently described as a "Business Development Specialist" and a "Regional Sales Executive," while Defendant Rustioni is referred to as a "Director of Business Development." DE 27 at ¶¶ 30, 64, 65.

conduct, but alleges generally that Defendants "continue to have in their possession resources and confidential and proprietary information" belonging to AFS and that Defendants continue to use such resources and information "to unfairly compete with Plaintiff ... in furtherance of Defendant FreightWise's business objectives." *Id*. at 4-5, ¶ 27.

Plaintiff asserts that Cochran and Rustioni began "acting ... for the benefit of Defendant FreightWise" at least 10 months prior to their respective resignations from AFS. *Id*. at 6, ¶ 38. AFS claims that it did not become aware of such action until September of 2016, nearly one year after Defendant Cochran's resignation. *Id*. at 6, ¶ 40.

Based on the foregoing allegations, Plaintiff filed an amended complaint that contained eight counts: (I) breach of duty of loyalty; (II) conversion; (III) intentional interference with business relations; (IV) tortious interference with contract; (V) violation of the Tennessee Uniform Trade Secrets Act ("TUTSA"); (VI) conspiracy; (VII) a claim for injunctive relief; and (VIII) a claim for punitive damages. *Id*. 6-14, ¶¶ 35-103.[4] Defendant argues that each of these counts should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) due to Plaintiff's failure to state a claim on which relief can be granted, or, alternatively, based on the preemption provision of the TUTSA, which is discussed in detail below.

## II. ANALYSIS

### A. Standard of Review

Review of a motion to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) requires the court to "construe the complaint in the light

---

[4] Plaintiff's initial complaint included a claim for copyright infringement (DE 1 at 11-12, ¶¶ 78-86) that was subsequently dismissed voluntarily by Plaintiff. *See* DE 20.

most favorable to the plaintiff and accept all factual allegations as true." *Laborers' Local 265 Pension Fund v. iShares Trust*, 769 F.3d 399, 403 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 1500, 191 L. Ed. 2d 452 (2015) (internal citation omitted). The court is not required, however, to accept as true any proffered legal conclusions. *Merritt v. Mountain Laurel Chalets, Inc.*, 96 F. Supp. 3d 801, 811 (E.D. Tenn. 2015) (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). In order to survive a motion to dismiss, the complaint in question must provide the grounds for the entitlement to relief that is sought, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The factual allegations contained in the complaint must be enough to demonstrate a plausible right to relief. *Twombly*, 550 U.S. at 555-61; *Schneid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436-37 (6th Cir. 1988). Merely positing a theory of legal liability that is unsupported by specific factual allegations does not state a claim for relief that survives a motion to dismiss. *Iqbal*, 556 U.S. at 678-79.

**B. Case at Bar**

For purposes of clarity, the Court will address each count alleged in the amended complaint separately. The Court begins with Count V, alleged violation of TUTSA, in light of its bearing on several of the remaining counts.

## 1. Violation of TUTSA (Count V).

Plaintiff alleges that Defendants violated the TUTSA by misappropriating information from AFS's confidential client database to "obtain[] an unfair advantage when soliciting Plaintiff's existing clients." DE 27 at 10, ¶ 71. Plaintiff claims that Defendants further violated the TUTSA by improperly accessing a confidential "formula" that Plaintiff uses to establish benchmark market prices, calculate new prices, and establish "unique client pricing structures." *Id*. at 9-10, ¶ 66, 71. Plaintiff claims that both its database and formula represent trade secrets under the TUTSA. *Id*. at 10, ¶ 70.

Defendants argue, however, that such information does not represent a trade secret because Plaintiff has not alleged facts sufficient to identify the database and formula as trade secrets. DE 30 at 17. Defendants maintain that Plaintiff has failed to allege how or when Defendants improperly obtained information from the database and formula, and note that Plaintiff has failed to reveal the actual identity of "Client X," thus preventing Defendants from knowing "what they allegedly misappropriated or why Plaintiff believes they did so." *Id*. Defendants argue that Plaintiff has thus failed to sufficiently state a claim under Rule 8(a) of the Federal Rules of Civil Procedure.

The TUTSA defines a "trade secret" as follows:

[I]nformation, without regard to form, including, but not limited to, technical, nontechnical or financial data, a formula, pattern, compilation, program, device, method, technique, process, or plan that:

(A) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and

(B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Tenn. Code Ann. § 47-25-1702(4). The Sixth Circuit has identified several factors to consider in determining whether something constitutes a "trade secret" under this definition, including "the extent of public knowledge; measures taken to guard its secrecy; the value of the information both to the business and to its competitors; money that was spent to develop the information; and the ease or difficulty with which it could be acquired by outsiders." *PartyLite Gifts, Inc. v. Swiss Colony Occasions*, 246 F. App'x 969, 973 (6th Cir. 2007) (citing *Wright Med. Tech., Inc. v. Grisoni,* 135 S.W.3d 561, 589 (Tenn.Ct.App. 2001)). The Tennessee Court of Appeals has further described a trade secret as "any secret formula, process, pattern, device or compilation of information that is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not use it." *Vantage Tech., LLC v. Cross*, 17 S.W.3d 637, 645 (Tenn. Ct. App. 1999) (internal citations and quotations omitted).

To establish a TUTSA violation, Plaintiff must also demonstrate that Defendants engaged in misappropriation of the alleged trade secret. "Misappropriation is defined in relevant part as either "acquisition ... by a person who knows or has reason to know that the trade secret was acquired by improper means," or disclosure without consent of a trade secret by a person who knows or has reason to know that it was "[a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." *Beijing Fito Med. Co., Ltd. v. Wright Med. Tech., Inc.*, No. 215-cv-02258-JPM-TMP, 2016 WL 502109, at *5 (W.D. Tenn. Feb. 8, 2016) (citing Tenn. Code Ann. § 47-25-1702(2)). "Improper means" includes "theft, bribery, misrepresentation,

breach or inducement of a breach of a duty to maintain secrecy or limit use, or espionage through electronic or other means ...." *Id.* (citing Tenn. Code Ann. § 47-25-1702(1)).

In the amended complaint, Plaintiff states that its database and formula are not generally known by the public, are not readily ascertainable, and derive independent economic value due to their inaccessibility to competitors who would benefit from their disclosure. DE 27 at 9-10, ¶¶ 66-69. Plaintiff also alleges that it has taken measures to guard the secrecy of its database and formula, including a password-security system that required users to regularly change their passwords. *Id.*, ¶¶ 62, 69. Plaintiff's efforts at establishing "trade secret" status are minimal and far from compelling, especially in light of a previous holding from the Tennessee Court of Appeals that items such as customer lists, credit information, pricing information, and profit and loss statements do not constitute confidential information entitled to "trade secret" protection. *See Amarr Co. v. Depew,* C/A No. 03A01–9511–CH–00412, 1996 WL 600330, *4-5 (Tenn.Ct.App. W.S., filed October 16, 1996). However, this district has determined that requiring a plaintiff who alleges misappropriation of a trade secret to describe the specific actions taken to maintain secrecy "would go far beyond the 'short and plain statement' required by" Fed. R. Civ. P. 8(a). *ProductiveMD, LLC v. 4UMD, LLC*, 821 F. Supp. 2d 955, 962, n.3 (M.D. Tenn. 2011). The Court therefore finds that the amended complaint sufficiently identifies the facets of the database and formula that make them trade secrets under Tenn. Code Ann. § 47-25-1702(4).

Defendants' additional argument that the TUTSA claim must be dismissed because Plaintiff has failed to adequately describe the alleged misappropriation is unpersuasive. The amended complaint asserts that Defendants misappropriated information from the database and

the formula so as to undermine Plaintiff when soliciting business from Plaintiff's clients. DE 27 at 10, ¶¶ 71, 74. This represents a sufficient allegation of misappropriation of a trade secret via improper means. *See Jones v. United Propane Gas, Inc.*, No. E200900364COAR3CV, 2009 WL 5083476, at *15 (Tenn. Ct. App. Dec. 28, 2009) ("An employer has a legitimate business interest in keeping its former employees from using the former employer's trade or business secrets or other confidential information in competition against the former employer.") (citing *Hasty v. Rent-A-Driver, Inc.,* 671 S.W.2d 471, 473 (Tenn. 1984). The specificity that Defendants seek to impose on Plaintiff at the pleading stage should instead be provided during the discovery process. *See Compuware Corp. v. Int'l Bus. Machines*, 259 F. Supp. 2d 597, 605 (E.D. Mich. 2002) (holding that a plaintiff's well-pled allegations of misappropriation of trade secrets provided adequate notice of its cause of action to the defendant and that "[a]ny further specificity desired by [the defendant] can be achieved through discovery"). Because the Court finds that Plaintiff has sufficiently pled the existence of trade secrets that were allegedly misappropriated, Count V of the amended complaint survives Defendants' motion to dismiss.

The remainder of the Court's analysis must then take into consideration the preemption clause contained in the TUTSA, which states unequivocally that the statute "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." Tenn. Code Ann. § 47-25-1708(a). The TUTSA does not, however, preempt "[o]ther civil remedies that are not based upon misappropriation of a trade secret." Tenn. Code Ann. § 47-25-1708(b)(2). Defendants contend that five counts contained in the amended complaint are preempted by this provision of the TUTSA. DE 30 at 1.

The seminal reasons for determining whether a cause of action is preempted by Tenn. Code Ann. § 47-25-1708 is found in *Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F. Supp. 2d 649 (E.D. Tenn. 2004). The district court in that case provided a sound interpretation of the preemption provision contained in the Uniform Trade Secrets Act ("UTSA"), which was ultimately adopted by the state of Tennessee:

> [A] better formulation of the UTSA preemption standard would be a "same proof" standard under which a claim will be preempted when it necessarily rises or falls based on whether the defendant is found to have "misappropriated" a "trade secret" as those two terms are defined in the UTSA. Stated another way, if proof of a non-UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective of whatever surplus elements or proof were necessary to establish it. *See Smithfield,* 905 F.Supp. at 350 ("The question is ... whether failure of the misappropriation claim would doom the remaining counts as well."). The UTSA defines "misappropriation" broadly enough to cover a wide range of conduct, including the sort of conduct contemplated by the various claims which are often involved in preemption disputes. If a proven claim, whether in whole or in part, constitutes misappropriation of trade secret, it is that and that alone.

375 F. Supp. 2d at 658. Utilizing this reasoning, the Court applies the "same proof" standard to determine whether, as alleged by Defendants, five of the remaining seven counts contained in the amended complaint are preempted by Tenn. Code Ann. § 47-25-1708.

**2. Breach of duty of loyalty (Count I).**

Plaintiff asserts that Defendants breached their duty of loyalty to AFS by misappropriating Plaintiff's "time and resources." DE 27 at 6, ¶ 39, 41. Defendant argues that this claim is preempted by the TUTSA. DE 30 at 6. The Court agrees.

As stated by the district court in *Hauck*, a non-TUTSA claim is preempted if the claim "necessarily rises or falls based on whether the defendant is found to have 'misappropriated' a 'trade secret.'" 375 F. Supp. 2d at 658. Plaintiff refrains from explicitly claiming that Defendants

9

breached a duty of loyalty by misappropriating a trade secret, yet alleges that Defendants "misappropriat[ed] Plaintiff's time and resources in order to benefit and further the goals of their competing business," which allegedly included "interfering with Plaintiff's business relationships" and "diverting clients and prospective clients to their newly formed business entity." DE 27 at 6, ¶¶ 39, 41. Plaintiff provides no specificity as to how such actions were executed, but states later in the amended complaint that its client database represents a "trade secret" that Defendants misappropriated by "removing confidential and proprietary information for the improper purpose of obtaining an unfair advantage when soliciting Plaintiff's existing clients." *Id*. at 10, ¶¶ 70-71. As such, proof of the claim for breach of a duty of loyalty due to solicitation of current and prospective clients "would also simultaneously establish a claim for misappropriation of trade secrets." *Hauck,* 375 F. Supp. 2d at 658. Plaintiff's meticulous efforts to avoid describing Defendants' actions under Count I as misappropriation of a trade secret does not save the count from preemption under Tenn. Code Ann. § 47-25-1708.

Alternatively, the Court agrees with Defendants' contention that Count I must be dismissed for failure to state a claim on which relief can be granted. The only part of Count I that includes any level of specificity states that Defendants "convert[ed] Plaintiff's time and tangible property (e.g., office supplies, computers, printers, telephones, etc)[.]" DE 27 at 6, ¶ 41. Plaintiff fails to provide any particulars as to how Defendants utilized these items to breach a duty of loyalty, but instead states broadly that Defendants "act[ed] adversely against Plaintiff's interests[.]" *Id*. This is precisely the type of conclusory statement that is insufficient to survive a Rule 12(b)(6) motion to dismiss. *See Iqbal* 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (internal citation

omitted); *see also Carrier Corp. v. Outokumpu Oyj,* 673 F.3d 430, 445 (6th Cir. 2012) ("To survive a motion to dismiss ... allegations must be specific enough to establish the relevant 'who, what, where, when, how or why.'") (quoting *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008)). Count I will be dismissed.

**3. Conversion (Count II).**

Plaintiff's sole claim under Count II alleges that Defendants "wrongfully asserted dominion over Plaintiff's tangible property," namely office supplies, "to benefit and further the goals of Defendant FreightWise ... in a manner inconsistent with Plaintiff's ownership rights[.]" DE 27 at 7, ¶ 45. Defendants contend that this fails to present a cognizable claim and should thus be dismissed pursuant to Rule 12(b)(6), and/or that this claim is preempted the TUTSA. DE 30 at 13-16.

In Tennessee, conversion is an intentional tort and a party seeking to establish a *prima facie* case of conversion must prove the following: (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights. *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 553 (Tenn. Ct. App. 2012) (internal citations omitted). Plaintiff's claim of conversion does little more than track this language and insert a reference to wrongful use of Plaintiff's "phone(s), computer(s), paper, printer(s), printer ink, and various other office supplies[.]" DE 27 at 7, ¶ 45.

The Court finds that Plaintiff's claim for conversion is deficient. While Plaintiff references several office supplies, there is no indication that Defendants' use of such materials was actually in defiance of the owner's rights. Plaintiff instead states broadly that Defendants

utilized these office supplies to "further the goals of Defendant FreightWise," but this is a wholly conclusory allegation that lacks any specificity as to how Defendants accomplished such goals. *See Royal v. Select Portfolio Servicing, Inc.*, No. 11-2214-STA-DKV, 2012 WL 174950, at *6 (W.D. Tenn. Jan. 20, 2012) (although asserted that the defendant converted items "for its own use," plaintiff's conversion claim failed because it failed to identify how Defendant allegedly used or benefitted from such items); *see also Greer v. Home Realty Co. of Memphis, Inc.*, No. 07-2639, 2010 WL 11493119, at *4 (W.D. Tenn. May 18, 2010) (dismissing complaint's conversion claim in part because "no factual content supports any allegation that [defendants] possessed any of [plaintiff's] property"). The amended complaint thus fails to sufficiently plead a claim for conversion.

As discussed *supra*, the amended complaint includes other broad allegations of conversion of property under Count I (breach of duty of loyalty), namely Plaintiff's allegations that Defendants "misappropriate[ed] Plaintiff's time and resources" and "convert[ed] Plaintiff's time and tangible property (e.g. office supplies, computers, printers, telephones, etc.)." DE 27 at 6, ¶¶ 39, 41. However, the amended complaint includes no factual support for any such claims other than its description of Defendants' efforts to utilize the formula and database to improperly solicit Plaintiff's existing clients. *Id.* at 9, ¶¶ 62-75. Therefore, like the breach of duty of loyalty claim, Plaintiff's conversion claim appears to include general allegations so as to avoid preemption under the TUTSA. By doing so, the amended complaint fails to provide any specificity that would allow the conversion claim to survive dismissal under Rule 12(b)(6). *See Williams v. E. I. du Pont de Nemours & Co.*, No. 2:15-CV-02111-STA, 2015 WL 6458285, at *2

(W.D. Tenn. Oct. 26, 2015) (dismissing conversion claim that "lacks any factual support in the allegations of the Complaint").

**4. Intentional interference with business relations (Count III).**

    Count III of the amended complaint contains the following three relevant assertions:

    Plaintiff had a variety of contractual and prospective business relationships with third parties under which it had legal rights.

    Upon reasonable belief, Defendants, knowing of these relationships, intentionally and unjustifiably interfered with them, causing certain third parties not to perform.

    Defendants[] acted through improper means and with improper motives causing them to fail to adhere to their duties to preserve Plaintiff's client relationships and remain loyal to the company.

DE 27 at 7, ¶¶ 48-50. Defendants argue that such language represents little more than a "fishing expedition" by Plaintiff that fails to state a claim on which relief can be based. DE 30 at 8. The Court agrees.

    To establish liability for intentional interference with business relations in Tennessee, a plaintiff must demonstrate five elements: (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and (5) damages resulting from the tortious interference. *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002).

13

Count III of Plaintiff's amended complaint simply recites these elements without any level of specificity, which warrants dismissal under 12(b)(6). *See Iqbal* 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (internal citation omitted); *Thompson v. Memphis Light, Gas & Water*, 416 S.W.3d 402, 408 (Tenn. Ct. App. 2011) ("[A] complaint must do more than simply parrot the legal elements of the cause[s] of action.") (internal citation and quotations omitted). Plaintiff fails to identify any specific party or identifiable class of third persons that were subject to Defendants' alleged interference, which prevents Plaintiff from satisfying the first element of the claim. *Cf. Ellipsis, Inc. v. Colorworks, Inc.*, 329 F. Supp. 2d 962, 969 (W.D. Tenn. 2004) (denying defendant's motion to dismiss claim for intentional interference with business relationship based on allegation in complaint that "adequately notifie[d] the defendant of the relevant existing business relationship with which it claims [the defendant] interfered"); *Milacron LLC v. Advanced Fluids, Inc.*, No. 1:13-CV-364, 2013 WL 5722795, at *5 (S.D. Ohio Oct. 21, 2013) (noting that plaintiff's vague allegations that defendant "interfered with their customers, representatives, and/or suppliers" failed to "raise [plaintiff's] right to relief above a speculative level, and thus they fail to sufficiently allege facts that satisfy the elements of a claim for tortious interference"). Plaintiff instead provides conclusory allegations without any facts to support such averments. *See Papasan*, 478 U.S. at 286 ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation."); *see also Stinson v. Dalton*, No. 08-2076, 2009 WL 10664880, at *3 (W.D. Tenn. Jan. 29, 2009) (granting motion to dismiss clam for tortious interference with business relations in light of amended complaint's failure to contain

any factual allegations regarding subject defendant's "intent or motive or ... improper means that [defendant] employed").[5] Count III of the amended complaint will therefore be dismissed.

**5. Tortious interference with contract (Count IV).**

Count IV of the amended complaint alleges that Defendants tortiously interfered with a contract with a specific client identified only as "Client X." DE 27 at 8, ¶¶ 53-59. This count is preempted by the TUTSA.

As noted above, if proof of a non-TUTSA claim "would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective of whatever surplus elements or proof were necessary to establish it." *Hauck* 375 F. Supp. 2d at 658. Two allegations contained under Count IV demonstrate that proof of tortious interference with contract would also involve evidence of misappropriation of a trade secret:

> While employed for Plaintiff in their respective sales leadership positions, Defendants Cochran and Rustioni became aware of Plaintiff's contract with Client X.
> ...
> Defendants' actions in inducing Client X to breach their contract with Plaintiff by offering a lower commission rate was the proximate cause of Client X's breach.

DE 27 at 8, ¶¶ 54, 59. Elsewhere in the amended complaint, Plaintiff explicitly avers that it was Defendants' "specific knowledge of Plaintiff's pricing structure with Client X [that] provided Defendant FreightWise an unfair competitive advantage in that Defendant FreightWise knew exactly how to structure their offer so as to induce Client X to breach their contract with Plaintiff[.]" *Id.* at 6, ¶ 30. This ostensibly refers to the "formula" Plaintiff used to establish its

---

[5] The Court finds particularly compelling the fact that Plaintiff had the opportunity in its amended complaint to provide sufficiently detailed factual allegations, and failed to do so.

prices and its "unique client pricing structure," which Plaintiff specifically identifies as a trade secret in the amended complaint. *Id*. at 9-10, ¶¶ 66, 70. Plaintiff also later claims that Defendants used the "confidential Formula" to "give Defendants an unfair competitive advantage in their solicitation of Plaintiff's clients in that they have knowledge of Plaintiff's current pricing and precisely how to undercut that pricing." DE 27 at 10, ¶ 74. Proof of Defendants' alleged interference with any contract with Client X would therefore necessarily establish proof of misappropriation of a trade secret. Accordingly, Count IV is thus preempted by the TUTSA.

### 6. Conspiracy (Count VI).

Plaintiff alleges that Defendants participated in a conspiracy to "misappropriate Plaintiff's clients, convert Plaintiff's tangible property, interfere with Plaintiff's business relationships, and tortiously interfere with Plaintiff's contracts." *Id*. at 11, ¶ 78. The Court notes that under Tennessee law, civil conspiracy "requires an underlying predicate tort allegedly committed pursuant to the conspiracy." *ProductiveMD*, 821 F. Supp. 2d at 967 (quoting *Watson's Carpet and Floor Coverings, Inc. v. McCormick,* 247 S.W.3d 169, 180 (Tenn.Ct.App. 2007)). Because Counts II (conversion) and III (intentional interference with business relations) are subject to dismissal based on their failure to state a claim upon which relief may be granted, there is no "underlying predicate tort" sufficiently pled in the amended complaint that would support any claim for conspiracy to convert Plaintiff's tangible property or interfere with Plaintiff's business relationships. Additionally, Count IV (tortious interference with contract) is preempted because the allegations contained in that count necessarily involve proof of whether Defendants misappropriated a trade secret. Any conspiracy claim related to tortious interference

16

with a contract is thus "specifically linked to the alleged theft of trade secrets" and must therefore be dismissed. *Id*.

Similarly, Plaintiff's claims regarding Defendants' attempts to "misappropriate Plaintiff's clients" necessarily involve evidence of whether Defendants misappropriated the so-called "formula" and "database," both of which are alleged to represent trade secrets. DE 27 at ¶ 70. Indeed, the amended complaint specifically alleges that Defendants "misappropriated Plaintiff's Formula and Database by removing confidential and proprietary information for the improper purpose of obtaining an unfair advantage when soliciting Plaintiff's existing clients." *Id*. at 10, ¶ 71. Because there are no remaining underlying predicate torts, Count VI does not survive.

**7. Injunctive relief (Count VII).**

Defendants move to dismiss the amended complaint's "claim" for injunctive relief for failure to state a claim under Fed. R. Civ. P. 12(b)(6) based on Plaintiff's failure to "produce any affidavits or actual evidence supporting the 'upon information and belief' allegations" provided under this count. DE 30 at 23. Defendants also argue that Count VII should be dismissed based on the doctrine of collateral estoppel. *Id*. at 21-23.

It is unclear why Plaintiff has listed "Injunctive Relief" as a count in the amended complaint, as injunctive relief is, as the term suggests, a remedy and not a cause of action. Curiously, Plaintiff later includes the request for injunctive relief under the "Prayer for Relief" section of the amended complaint. *See* DE 27 at 14, ¶ 5. Additionally, although the amended complaint includes no claim for copyright infringement, Plaintiff additionally claims that injunctive relief is necessary to "protect Plaintiff's interests in its ... copyrighted database

compilations" and cites 17 U.S.C. § 502, which governs remedies for infringement of a copyright.

Regardless, Count VII must be dismissed because a form of relief cannot state a cause of action upon which relief may be granted. *See Cronin v. Bank of Am.*, No. 12-13249, 2013 WL 2626739, at *6 (E.D. Mich. June 11, 2013) ("In Count III, [plaintiff] requests injunctive relief. This claim must be dismissed because injunctive relief is a remedy, not a cause of action."); *Tann v. Chase Home Fin., L.L.C.,* Case No. 10-14696, 2011 WL 3799841, *10 (E.D. Mich. Aug. 26, 2011) ("[P]laintiff cannot seek an injunction as a stand-alone cause of action; it is only available as an equitable remedy."). Plaintiff may however seek injunctive relief, in accordance with applicable rules and procedures, if able to establish that Defendants misappropriated a trade secret. *See J.T. Shannon Lumber Co. v. Barrett*, No. 2:07-CV-2847-JPM-CGC, 2010 WL 3069818, at *4 (W.D. Tenn. Aug. 4, 2010) ("Under TUTSA, a plaintiff who successfully establishes that a defendant misappropriated a trade secret is entitled to injunctive relief and/or an award of damages.") (citing Tenn. Code Ann. §§ 47-25-1703, 1704); *Meadow v. Nibco, Inc.*, No. 3-15-1124, 2016 WL 2986350, at *8 (M.D. Tenn. May 24, 2016) ("Nothing about this ruling [granting motion to dismiss a cause of action for injunctive relief] precludes Plaintiffs from seeking declaratory or injunctive relief as a remedy, should there be liability, in this action.").[6]

---

[6] The Court notes that Defendants also raised a collateral estoppel argument based on the determination of the Davidson County Chancery Court in denying a temporary injunction that Plaintiff failed to demonstrate a likelihood of success on the merits. It is unnecessary for the Court to determine whether the Chancery Court's ruling can be considered for Rule 12(b)(6) purposes because the Court is not persuaded by Defendants' arguments regarding the scope of collateral estoppel in this context.

**8. Punitive damages (Count VIII).**

Defendants finally contend that Plaintiff's request for punitive damages should be dismissed because it fails to plead sufficient facts to demonstrate that Defendants have acted intentionally, fraudulently, maliciously, or recklessly, as required under Tennessee law. *See Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992).

As with the count for injunctive relief, Count VIII, labeled "Punitive Damages," does not present a cause of action, but instead a prayer for relief. *See Apex Energy Sols. of Cincinnati LLC v. Apex Energy Sols. of Indiana, LLC*, No. 1:10-CV-106, 2010 WL 4642902, at *8 (S.D. Ohio Nov. 9, 2010) ("This 'cause of action' is not a claim for relief but a request for punitive damages."). Plaintiff may however pursue punitive damages if it successfully establishes that Defendants' alleged violation of the TUTSA was intentional, fraudulent, malicious, or reckless. To the extent that Defendants request dismissal or denial of the prayer for punitive damages under Fed. R. Civ. P. 12(b)(6), such request must be denied as the amended complaint contains allegations that are sufficient to state a claim of at least intentional conduct on the part of Defendants.

### III. CONCLUSION

Based on the foregoing analysis, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. As a result, Counts I, II, III, IV, VI, VII, and VIII will be DISMISSED WITH PREJUDICE. An appropriate order will enter.

BARBARA D. HOLMES
United States Magistrate Judge