IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| AFS LOGISTICS, LLC | ) | |
| | ) | |
| v. | ) | Case No. 3:16-cv-3139 |
| | ) | |
| CHRISTOPHER R. COCHRAN, | ) | |
| ALESSANDRO RUSTIONI, and | ) | |
| FREIGHTWISE, LLC | ) | |

**O R D E R**

Pending before the Court is Plaintiff's Motion to Compel Arbitration (Docket No. 59). This court has jurisdiction pursuant to 28 U.S.C. § 1332. For the following reasons, Plaintiff's motion is DENIED. Further, the stay of discovery is hereby lifted, and discovery should resume promptly. Within seven (7) days of the date of entry of this order, the parties shall contact Ms. Jeanne Cox, Courtroom Deputy, at either Jeanne_W_Cox@tnmd.uscourts.gov or 615-736-5164 to obtain a date and time for a telephonic status conference to reset the dispositive motions deadline and the trial.

**Background**

At the center of this dispute is the claim of Plaintiff AFS Logistics, LLC ("AFS") that Defendants Christopher Cochran and Alessandro Rustioni, who are former employees of AFS, misappropriated trade secrets of AFS in violation of the Tennessee Uniform Trade Secrets Act ("TUTSA"), which they then used to advance their own company, Defendant FreightWise, L.L.C. Plaintiff filed suit against Defendants on December 2, 2016, seeking injunctive relief and damages based on a number of claims in addition to misappropriation of trade secrets, including

copyright infringement, breach of duty of loyalty, conversion, intentional interference with business relations, tortious interference with contract, and conspiracy.[1]

On August 9, 2017, Plaintiff filed this motion, asking the Court to order Plaintiff's misappropriation of trade secrets claims to arbitration, to be joined with the breach of employment contract claims against Defendants Cochran and Rustioni that were apparently first submitted for arbitration by Plaintiff also in August of 2017. *See* Docket No. 59 at 3. Plaintiff does not rely on the existence of any agreement with Defendants that directly compels arbitration of the claims in this case. Rather, Plaintiff asserts that the misappropriation of trade secrets claims are within the scope of the arbitration clauses found in the employment agreements with Defendants Cochran and Rustioni, which provide as follows:

> **18. Arbitration.** AFS and [Cochran/Rustioni] agree that any controversy, dispute or claim arising out of, directly or indirectly, or relating to this Contract, or breach thereof, or [Cochran's/Rustioni's] employment or relationship with AFS, will be submitted to binding arbitration in accordance with the rules of the American Arbitration Association. The written determination of the arbitrator will be final, binding and conclusive on the parties. However, the parties may also seek injunctive relief in court for any breach of this Contract. By signing, [Cochran/Rustioni] specifically agrees to the Arbitration provision in Section 18.

(Docket No. 59 at 11 and 16-17). AFS also refers to an arbitration provision in the Business Protection, Confidentiality, Non-Solicitation and Non-Competition Agreement ("Business

---

[1] On February 21, 2017, Plaintiff filed a First Amended Complaint. Docket No. 27. All of the claims other than misappropriation of trade secrets were either dismissed voluntarily (*see* Docket No. 20) or upon Defendants' motion (*see* Docket Nos. 56-57). Plaintiff's original and amended complaints also included "counts" for injunctive relief (*see* Docket Nos. 1 and 27), which were dismissed as claims without prejudice for Plaintiff to seek appropriate injunctive relief in accordance with applicable rules and procedures. *See* Docket No. 56 at 18.

Protection Agreement") between AFS and TracBack Solutions Incorporated (of which Defendants Cochran and Rustioni were previously the shareholders), which provides:

> **9. Governing Law & Arbitration.** This Agreement will be construed in accordance with and governed for all purposes by the laws of the State of Tennessee. AFS and TracBack agree that any controversy, dispute or claim arising out of, directly or indirectly, or relating to this Agreement, or breach thereof, will be submitted to binding arbitration in accordance with the Rules of the American Arbitration Association. The written determination of the arbitrator will be final, binding and conclusive on the parties. However, AFS may also seek injunctive relief in court for any breach of this Agreement.

(Docket No. 59 at 21).[2]

Plaintiff contends that these arbitration clauses broadly require the arbitration of its misappropriation of trade secret claims dispute because those claims arise out of or are related to Plaintiff's employment of or relationship with Defendants Cochran and Rustioni. Plaintiff also maintains that submitting the misappropriation of trade secrets claims to arbitration would be an efficient resolution of the parties' disputes because Plaintiff has already submitted to arbitration its claims against Defendants Cochran and Rustioni for alleged breaches of the employment agreements and the Business Protection Agreement.

In opposition to Plaintiff's motion, Defendants assert that there is no applicable arbitration agreement for the claims at issue in this case, and no arbitration agreement between Plaintiff and Defendant FreightWise at all. Defendants further argue that, even if the arbitration clauses found in the employment agreements broadly cover the misappropriation of trade secret

---

[2] TracBack Solutions Incorporated is not a party to this litigation.

claims, Plaintiff waived the right to enforce arbitration of those claims by not timely seeking arbitration and, instead, litigating with Defendants.[3]

In their response to Plaintiff's motion to compel arbitration, Defendants also assert that Plaintiff's breach of contract claims are nothing more than a reconstituted version of the misappropriation of trade secret claims and are therefore preempted under the TUTSA. For that reason, Defendants assert that Plaintiff's breach of contract claims are not arbitrable, and request that the Court preclude Plaintiff from proceeding with arbitration of those claims. Plaintiff had full opportunity to, and did, address this issue in its reply brief. *See* Docket No. 63.

The parties have proceeded with litigation of this case since shortly after the filing of the original complaint. Defendants moved to dismiss Plaintiff's original complaint for failure to state a claim. (Docket No. 10). Plaintiff requested, and was granted, an extension of time to respond to the motion to dismiss (Docket Nos. 11 and 14), which it did on February 2, 2017 (Docket Nos. 23 and 24). In the interim, an initial case management conference was held on January 31, 2017, and a case management/scheduling order was entered on February 21, 2017 (Docket No. 28).

Separately, also on February 2, 2017, Plaintiff moved to amend its complaint (Docket No. 21), which it was granted leave to do (Docket No. 26). Notably, in the motion to amend, Plaintiff neither sought to add breach of contract claims nor suggested that the trade secret claims are inextricably intertwined with the arbitrable breach of contract claims. An amended complaint was filed on February 21, 2017 (Docket No. 27). In response, Defendants filed a motion to dismiss the amended complaint (Docket No. 29). After the parties' extensive briefing

---

[3] Defendants additionally note that prior to the instant case, Plaintiff also brought a lawsuit in state court, seeking injunctive relief and asserting many of the same claims originally made by Plaintiff here.

4

on the merits of the motion to dismiss, the Court dismissed seven of Plaintiff's eight claims. *See* Docket Nos. 56 and 57. Plaintiff also failed to raise the issue of arbitration in its opposition to Defendants' motion to dismiss.

Several key deadlines have already passed or substantially progressed toward completion in this case. In addition to the April 5, 2017 deadline for motions to amend, a deadline of June 5, 2017 was set for disclosure of experts and expert reports. *See* Initial Case Management Order at Docket No. 28. Plaintiff filed a motion to extend this deadline, but the motion was untimely under the Court's procedures, provided no explanation of Plaintiff's diligence in attempting to meet the deadline, and therefore failed to establish good cause for extension of the deadline. The requested extension was accordingly denied. *See* Order at Docket No. 52.

Although discovery depositions were stayed by the Court's order following the filing of the instant motion (*see* Docket No. 61), extensive written discovery has been ongoing throughout this case. *See* Docket Nos. 55 at 2 and 62-2.[4] Discovery disputes have also arisen between the parties, which required resolution by the Court. *See* Docket Nos. 44, 49, and 52. Multiple settlement discussions have occurred between the parties, including the possibility of mediation of this case. *See* Docket Nos. 54 and 55. In addition to the initial case management conference, the Court also held case management conferences on July 27 and August 18, 2017 (Docket No. 58). Other judicial time was spent reviewing the parties' reports, for instance regarding case resolution efforts (Docket Nos. 43 and 55), and reviewing and entering orders on uncontested matters, such as the parties' request for a protective order (Docket Nos. 35 and 40). As discussed,

---

[4] Trial was also set for March 13, 2018, and was cancelled only to accommodate resolution of Plaintiff's motion to compel arbitration.

the Court also ruled on Defendants' motion to dismiss, after review and consideration of the parties' extensive briefing on the merits.

## Analysis

Although the parties disagree whether the Federal Arbitration Act or the Tennessee Uniform Arbitration Act applies, the Court need not decide that issue because the outcome is the same under either statute.[5] Both federal law and Tennessee law favor arbitration. *See Ferro Corp. v. Garrison Indus., Inc.*, 142 F.3d 925, 932 (6th Cir. 1998); *Buraczynski v. Eyring*, 919 S.W.2d 314, 317 (Tenn. 1996). Regardless of which statute applies, a party may however waive arbitration (just as a party may waive any other contractual right). *See Gen. Star Nat'l Ins. Co. v Administratia Asigurarilor de Stat*, 289 F.3d 434, 438 (6th Cir. 2002); *Carolyn B. Beasley Cotton Co. v. Ralph*, 59 S.W.3d 110, 113 (Tenn. Ct. App. 2000).

The standards for determining whether Plaintiff has waived its right to arbitration are also substantially the same under either federal law or Tennessee law. In order to prevail, Defendants must demonstrate that Plaintiff knew of the right to arbitrate, acted completely inconsistently with that right as shown by the particular facts and circumstances, and in doing so, prejudiced Defendants. *Johnson Associates Corp. v. HL Operating Corp.*, 680 F.3d 713, 718-21 (6th Cir. 2010). *See also Rebound Care Corp. v. Universal Contractors, Inc.*, 2000 WL 758610, at *7 (Tenn. Ct. App. June 13, 2000).

Here, there is no dispute that Plaintiff knew of its claimed right to arbitrate. That Plaintiff seeks to compel arbitration based on agreements executed well before the commencement of this

---

[5] Neither party disputes that the Court may determine arbitrability. Because the Court concludes that Plaintiff has waived its right to arbitration, it is not necessary to determine whether the misappropriation of trade secret claims fall within the scope of the contractual arbitration provisions. Further, except in circumstances not applicable here, determination of whether a party has waived the right to arbitration rests with the court. *JPD, Inc. v. Chronimed Holdings, Inc.*, 593 F.3d 388, 394 (6th Cir. 2008) and *Carolyn B. Beasley Cotton Co., supra*.

6

litigation further and sufficiently demonstrates Plaintiff's knowledge of its right to arbitrate. Thus, the only inquiries are whether Plaintiff acted inconsistently with its right to arbitration, and, if so, whether such action prejudiced Defendants.

**Conduct Inconsistent with Arbitration Agreement**

In the Court's view, Plaintiff's actions in this case are completely inconsistent with any reliance on its right to arbitrate. Without first seeking arbitration, Plaintiff initiated this lawsuit, amended its complaint, participated in several conferences with the Court, engaged in extensive discovery, attempted a resolution through settlement discussions, responded to Defendants' motion to dismiss on the merits, and subjected itself to the Court's rulings on various matters. Both the parties and this Court have expended substantial time and resources on this case.

In reply to Defendants' claim of waiver, Plaintiff asserts that (1) it has not participated in this litigation to an extent that would demonstrate waiver; (2) its participation was only in pursuit of injunctive relief, which is expressly excepted from the arbitration clauses; and (3) Defendants have not shown that they will suffer "actual prejudice" from arbitration of the trade secrets claim. Plaintiff's attempts to characterize its actions as consistent with the arbitration clause are unavailing.

Because the determination of whether a party waived its right to arbitrate depends on the particular facts and circumstances of each case, that Plaintiff may have done more or less than some other party in another case might be helpful, but is not determinative. While this case may be less like the aforementioned *Carolyn B. Beasley Cotton Co.* case, where the defendant waited until the eve of trial to request arbitration, the circumstances here are closely analogous to the *Johnson Associates* case in which the party seeking to compel arbitration failed to raise the issue of arbitration in initial pleadings (including amended pleadings), participated in case

7

management and scheduling, engaged in discovery, made attempts to settle the case, and sought various forms of relief from the court. 2010 WL 4942788, at *3-4 (M.D. Tenn. Nov. 30, 2010) (*aff'd Johnson Associates Corp. v. HL Operating Corp*., 680 F.3d 713 (6th Cir. 2010)). Here, Plaintiff did all of those things, and also opposed on the merits Defendants' motion to dismiss. These actions all support the inference that Plaintiff intended to go forward with the litigation rather than resort to arbitration.

In its reply brief, Plaintiff cites the *Johnson Associates* decision on 10 separate occasions. *See* Docket No. 63. But, Plaintiff overlooks the crux of the opinion by arguing that

> there is no issue as to the timeliness of the Plaintiff's request for arbitration .... [A] Plaintiff is not required to bring all possible claims against a Defendant at once and can evaluate the progress and likely recovery of certain proceedings prior to making decisions and weighing the time, expense, merit, and other factors associated with bringing other claims that it has a right to pursue.

*Id*. at 9-10. This myopic (and uncited) assertion ignores the entire basis of the Sixth Circuit's analysis, which was to determine whether a party may waive an agreement to arbitrate by taking actions completely inconsistent with any reliance on an arbitration agreement, and by "delaying its assertion to such an extent that the opposing party incurs actual prejudice." 680 F.3d at 717 (quoting *Hurley v. Deutsche Bank Tr. Co. Americas*, 610 F.3d 334, 338 (6th Cir. 2010)). Indeed, it is this very circumstance described by Plaintiff of waiting to see if a lawsuit goes the party's way, the so-called "likely recovery", with which the Sixth Circuit took issue. The Sixth Circuit even noted that the existence of a contractual provision declaring that the right to arbitration could not be waived did not preclude waiver, as such a finding "would permit parties to waste scarce judicial time and effort and hamper judges' authority to control the course of the proceedings and allow parties to test[ ] the water before taking the swim by delaying assertion of their right to arbitration until the litigation is nearly complete." *Id*. (quoting *S & R Co. of*

8

*Kingston v. Latona Trucking, Inc.,* 159 F.3d 80, 86 (2d Cir. 1998), *cert. denied,* 528 U.S. 1058, 120 S .Ct. 629, 145 L. Ed. 2d 506 (1999)) (internal quotations omitted). As stated by the district court in the underlying opinion:

> Sixth Circuit precedent does not conflict with, and instead supports, the Court's conclusion that [the party seeking arbitration] actively litigated this case in court for a lengthy period without raising its right to arbitrate, reflecting its non-reliance on that right .... In making this assessment, the Court finds compelling the reasoning applied in *Lease Group Resources,* where the court noted that if the arbitration clause was enforced, "there would be nothing to keep any litigant with an arbitration clause from testing the judicial waters, and to do so as long as he liked ... and then nullify[ ] all that has gone before by demanding arbitration." 2009 U.S. Dist. LEXIS 3157, *10–11 (quoting *Uwaydah v. Van Wert County Hospital,* 246 F. Supp. 2d 808, 814 (N.D. Ohio 2002)) .... This approach is inconsistent with reliance on the right to arbitrate, and one that may be wasteful of the Court's resources[.]

2010 WL 4942788, at *4.

Plaintiff attempts to distinguish the instant matter from *Johnson Associates* by claiming that in that case, "more discovery had taken place than was allowed in arbitration and constituted actual prejudice." Docket No. 63 at 6 (internal quotations omitted). The Court notes however that as of the date on which the defendant in *Johnson Associates* filed its motion to compel arbitration, written discovery had been served but no discovery responses had been received and no depositions had been conducted. 2010 WL 4942788, at *1. In contrast, written discovery in the instant case has been exchanged and responses to such discovery requests were provided well before Plaintiff signaled any attempt to pursue arbitration. *See* Docket No. 43 at 2. Moreover, describing a scenario directly applicable to the instant case, the Sixth Circuit noted that actual prejudice can be demonstrated by situations in which "a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration[.]" *Johnson Associates*, 680 F.3d at 719-20.

Just as a defendant's failure to invoke an arbitration provision as an affirmative defense in its answer can demonstrate a lack of reliance on a right to arbitrate, *id*. at 718, here, too, Plaintiff's actions in bringing a federal lawsuit asserting common law and statutory claims without raising arbitration evinces an intent to litigate rather than arbitrate.[6] Only after months of litigation, including discovery, settlement attempts, and several contested motions did Plaintiff assert for the first time that the remaining claims in this case are arbitrable. Plaintiff even waited to file a motion to compel arbitration until after the Court had dismissed all but one of its eight asserted claims. *See* Docket Nos. 57, 59.

There is no other reasonable interpretation of Plaintiff's untimely demand for arbitration than as a deliberate tactic to test the judicial waters but then, when those waters did not flow the direction Plaintiff intended, to change routes in hopes of finding a different current. As noted by the *Uwaydah* court, allowing a party to deliberately delay demanding arbitration as a means of "nullifying all" that happened in the court case, fosters rather than deters the worst things about litigation—"including most particularly unnecessary delay, wasteful expense, and the manipulative impulse to forum-shop." 246 F. Supp. 2d at 814.

Defendants argue that Plaintiff's contention that its claim for injunctive relief precludes a waiver of arbitration is disingenuous, and the Court agrees. Although Plaintiff correctly notes that it may, under the contractual arbitration provisions, pursue injunctive relief in court, Plaintiff has done nothing to actually seek injunctive relief in this case, except to include an injunction count in its complaint. As the Court previously held, there is no such thing as an injunction cause of action, and that count was dismissed, without prejudice for Plaintiff to seek an

---

[6] Notably, Plaintiff commenced this lawsuit on the heels of a state court lawsuit in which Plaintiff also sought non-injunctive relief, and similarly failed to assert any right to arbitration. In that lawsuit, at least, Plaintiff did request, and was denied, an injunction.

injunction upon proper motion. *See* Memorandum Opinion, Docket No. 56 at 17-18. Plaintiff has not moved for an injunction during the entire pendency of this case. Simply including "injunctive relief" as a count or even a prayer for relief in a complaint falls far short of actually pursuing an injunction.

The totality of the circumstances of this case demonstrates Plaintiff's intent to litigate its misappropriation of trade secret and other claims against Defendants, with the request for injunctive relief as little more than an add-on. To allow the mere mention of injunctive relief to overcome all of Plaintiff's other actions that are completely inconsistent with any right to arbitration would, in the Court's opinion, be a farcical distortion of the arbitration process.

This leaves the final part of the inquiry, prejudice. As previously noted, the Sixth Circuit follows the rule that substantive prejudice results "when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration." *Johnson Associates*, 680 F.3d at 719 (citation omitted). That is precisely the circumstance here. Due to Plaintiff's own dilatoriness, its request to extend the time for expert disclosures was denied. Additionally, many of the claims asserted by Plaintiff were dismissed, upon Defendants' motion, after consideration of the merits of the claims. Defendants assert (and Plaintiff does not deny) that only four days after the Court's dismissal of seven of Plaintiff's eight claims, Plaintiff notified Defendants of its intention to arbitrate claims arising out of the same facts and behavior alleged in Plaintiff's amended complaint. Plaintiff's motion to compel arbitration was filed just nine days after the Court's dismissal order. Allowing Plaintiff to avoid those outcomes by now invoking arbitration is extremely prejudicial to Defendants.

Prejudice can also be found when a party "too long postpones … invocation of [the] contractual right to arbitration, and thereby causes [the party's] adversary unnecessary delay or

expense." *Id*. That is also the circumstance here. Plaintiff failed to assert any right to arbitrate for some eight months, during which time the Court held case management conferences, ruled on disputes (including a dispositive motion), and entered orders on uncontested matters. During that time, the parties also participated in case management conferences, and additionally engaged in discovery and in settlement discussions.[7] As is apparent from the filings in this case, counsel for both parties have also spent considerable time (at undoubtedly considerable expense to the parties) in addressing the various contested matters, including the two motions to dismiss, Plaintiff's request to extend the time for expert disclosures, and the instant motion to compel arbitration. Plaintiff's argument that insufficient effort has been committed to this case to constitute a waiver ignores the substantial time and effort that the parties and the Court have expended in this litigation. Allowing Plaintiff to now rely on an arbitration clause that it took no action to enforce, and acted completely inconsistently with, would substantially prejudice Defendants, both by further delaying resolution of this dispute and by the additional (and perhaps duplicative) costs that would be incurred.[8] It is the combination of all of these factors in this case that causes actual prejudice to Defendants.

Finally, Defendants ask the Court to stay or enjoin all arbitration proceedings initiated by Plaintiff against Defendants, since Plaintiff concedes that the breach of contract claims are based on the same facts and circumstances as the trade secret claims that remain for disposition in this

---

[7] Plaintiff incorrectly attributes to the Sixth Circuit the statement that prejudice constituting waiver should not be inferred when only minimal discovery has been conducted. Docket No. 63 at 6. That statement was actually an argument made by the party resisting waiver in the *Johnson Associates* case, and one that the Sixth Circuit found inapplicable. 680 F.3d at 720. Regardless, the activity in this case has far exceeded minimal discovery.

[8] The Court recognizes that denial of Plaintiff's motion may result in parallel proceedings, but that possibility does not convince the Court that Defendants are not prejudiced by Plaintiff's untimely invocation of arbitration.

litigation. However, the Court finds no authority to stay or enjoin all arbitration proceedings arising from alleged breaches of contract by Defendants. *See, e.g., Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1110 (11th Cir. 2004) (holding that district court's grant of an injunction enjoining defendants from arbitrating claims that had previously been ruled arbitrable but were purportedly dismissed by plaintiffs was abuse of discretion); *In re Regions Morgan Keegan Open-End Mutual Fund Litigation*, 2009 WL 10664432, at *5 (W.D. Tenn. Sept. 30, 2009) (holding that the district court "cannot override the strong policy preference in favor of arbitration without a statutory directive to the contrary").[9] Further, although there is some appeal to Defendants' argument that Plaintiff's breach of contract claims are entirely preempted because they are rooted in misappropriation of trade secrets, the Court stops short of going that far. *See Atco Mfg. Co. v. Share Corp.*, No. 3:07-cv-028, 2007 WL 1521008, at *2 (E.D. Tenn. May 22, 2007) ("TUTSA does not preempt ... '[c]ontractual remedies, whether or not based upon misappropriation of a trade secret[.]'") (citing T.C.A. § 47-25-1708(a)); *Vincit Enterprises, Inc. v. Zimmerman*, No. 1:06-cv-57, 2006 WL 1319515, at *7 (E.D. Tenn. May 12, 2006) ("[C]ontractual remedies are specifically excluded from [TUTSA] preemption."); *Hinson v. Rourke*, 2015 WL 5033908, at *3, n.1 (Tenn. Ct. App. Aug. 25, 2015) (claims based on contractual remedies are not preempted by TUTSA).[10]

---

[9] If Defendants are aware of contrary authority supporting the requested stay, they may file an appropriate motion. Further, nothing in this Court's order precludes Defendants from requesting that the arbitrator stay arbitration, if permitted under applicable rules.

[10] Although there is a reference in the *PartyLite* case cited by Defendants to preemption of employment contract claims, that reference was in the context of a motion for a preliminary injunction and simply provides that "to the extent plaintiff's claims for breach of contract … are preempted by TUTSA, plaintiff has no likelihood of success on the merits," but offers no authority or analysis supporting any such preemption. *PartyLite Gifts, Inc. v. Swiss Colony Occasions*, 2006 WL 2370338, at *7 (E.D. Tenn. Aug. 15, 2006).

13

Although Plaintiff's breach of contract claims are not preempted, the Court finds that Plaintiff waived any right to pursue arbitration of its misappropriation of trade secrets claim when it invoked litigation of that claim by filing its original and amended complaints. *See Gibson Guitar Corp. v. Elderly Instruments, Inc.*, No. 3:05-0523, 2006 WL 3316971, at *1 (M.D. Tenn. Nov. 14, 2006) (holding that a litigant may waive its right to invoke arbitration "by so substantially utilizing the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay"). *See also St. Clair Marine Salvage, Inc. v. S/Y WITHCH OF ENDOR MC No. 6137 TZ*, No. 14-11942, 2014 WL 4386725, at *3 (E.D. Mich. Sept. 5, 2014) ("[W]e have held that a court must presume that a party implicitly waived its right to arbitrate when it chooses a judicial forum for the resolution of a dispute .... Once a party selects a forum, the courts have an interest in enforcing that choice and not allowing parties to change course midstream.") (quoting *Grumhaus v. Comerica Securities, Inc.,* 223 F.3d 648, 650-51 (7th Cir. 2000)). In particular, the Court notes Plaintiff's general assertion of trade secrets misappropriation throughout the numerous counts contained in the amended complaint. *See* Docket No. 27 at ¶¶ 39, 71, 75, 78-80, 96, 100. The statement of facts is comprised entirely of Defendants' alleged efforts to misappropriate trade secrets. *See id.* at ¶¶ 13-34.

The Court dismissed all non-TUTSA counts involving such misappropriation based on preemption by TUTSA. *See* Docket No. 57. Plaintiff, having failed to advance such claims through the litigation process, cannot now retry its argument through arbitration by contending that a general misappropriation of trade secrets claim falls under the umbrella of "breach of contract," and is thus arbitrable. DE 63 at 9. *Cf. Wiepking v. Prudential-Bache Sec., Inc.*, 940 F.2d 996, 999 (6th Cir. 1991) (noting that a party first consenting to arbitration then litigating the same claims in federal court would amount to "seeking a second bite at the apple"). To be clear,

the Court rejects Plaintiff's request to "compel arbitration of the remaining misappropriation of trade secrets claim[s]" (Docket No. 59 at 4-5), and finds that arbitration of any such claims has been waived. *See also Garcia v. Weltman, Weinberg & Reis Co. of Michigan*, No. 2:13-cv-14362, 2014 WL 1746522, at *4 (E.D. Mich. Apr. 30, 2014) ("Even if claims are clearly subject to arbitration, a party's conduct may waive its ability to compel arbitration."). *See also Quality Improvement Consultants, Inc. v. Williams*, 129 F. App'x 719, 722 (3d Cir. 2005) ("[Plaintiff] substantially invoked litigation by filing a complaint in federal court and thus waived its right to arbitrate at least those claims contained in the complaint."); *Doctor's Associates, Inc. v. Distajo*, 107 F.3d 126, 133 (2d Cir. 1997) ("[P]rior litigation of the same legal and factual issues as those the party now wants to arbitrate results in waiver of the right to arbitrate.").

## Conclusion

For the foregoing reasons, Plaintiff's Motion to Compel Arbitration (Docket No. 59) is DENIED as to all claims involving misappropriation of trade secrets, including any so-called breach of contract claims based directly or indirectly on misappropriation, as Plaintiff waived its right to arbitration of such claims. To the extent that any of Plaintiff's breach of contract claims are based on **facts and arguments other than misappropriation of trade secrets**, however, those claims are unaffected by the Court's determination.

It is SO ORDERED.

_____
BARBARA D. HOLMES
United States Magistrate Judge

15